**Nos. 25-8045, 26-241**

—————————————————————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

—————————————————————————————

SHAWNNA MONTES,

*Plaintiff-Appellee/Cross-Appellant*,

v.

PENNEY OPCO LLC; CATALYST BRANDS LLC; and
SPARC GROUP LLC,

*Defendants-Appellants/Cross-Appellees*.

———————————————————————

On Appeals from the United States District Court
for the Eastern District of Washington
No. 2:25-cv-00281-TOR
Hon. Thomas O. Rice

—————————————————————————————

**PLAINTIFF-APPELLEE/CROSS-APPELLANT SHAWNNA MONTES'S
PRINCIPAL AND RESPONSE BRIEF**

—————————————————————————————

HATTIS LUKACS & CORRINGTON
Daniel M. Hattis
Paul Karl Lukacs
Che Corrington
123 112th Ave NE, Suite 1
Bellevue, WA 98004
Telephone: (425) 233-8650

*Attorneys for Plaintiff-Appellee/Cross-
Appellant Shawnna Montes*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................3

STATEMENT OF THE CASE ...............................................................5

      A.     Factual Allegations ................................................ 5

      B.     Procedural History ................................................ 7

           1.     Aéropostale Removes The Case And Then Files A Motion To Dismiss. ........................................7

           2.     The District Court Dismisses The Case Without Prejudice For Lack Of Subject Matter Jurisdiction.........8

           3.     The District Court Denies Ms. Montes's Motion For Reconsideration To Have The Case Remanded. ..............9

           4.     Ninth Circuit Procedural History...................................10

SUMMARY OF THE ARGUMENT .....................................................11

STANDARD OF REVIEW ..................................................................13

ARGUMENT .......................................................................................14

      I.     THE DISTRICT COURT NEEDED TO REMAND THE CASE AFTER FINDING IT LACKED SUBJECT MATTER JURISDICTION...................................................14

      II.     THE DISTRICT COURT ABUSED ITS DISCRETION BY REFUSING TO RECONSIDER ITS DISMISSAL ORDER.............15

      III.     THE DISTRICT COURT CORRECTLY CONCLUDED THAT THERE WAS A LACK OF ARTICLE III STANDING....................18

ii

A.    Article III Requires There To Be A Concrete Injury.............. 19

B.    Aéropostale Failed Its Burden Of Showing That Ms. Montes Alleged Suffering A Concrete Injury. ................. 21

C.    Aéropostale's New Injury Argument On Appeal Is Unpersuasive.......................................................... 22

D.    This Court Has Never Considered Whether The Type Of Allegations In This Case Establish An Article III Injury. ...................................................................... 30

E.    The District Court's Redressability Analysis Was Incorrect. ................................................................. 33

IV.    MS. MONTES'S CEMA CLAIMS ARE NOT PREEMPTED..........35

A.    CAN-SPAM Does Not Preempt CEMA Claims Based On Materially False Or Misleading Email Subject Lines........................................................................ 36

B.    A CEMA Plaintiff Does Not Need To Allege Every Element Of Common-Law Fraud To Avoid CAN-SPAM Preemption. ...................................................... 38

C.    Ms. Montes Adequately Alleges Materiality........................... 44

CONCLUSION ...............................................................................46

## TABLE OF AUTHORITIES

**Cases**                                         **Pages**

*Agnew v. Macy's Retail Holdings, LLC,*
No. 2:25-CV-02006-JHC,
2026 WL 764140 (W.D. Wash. Mar. 18, 2026)................................................37

*Asis Internet Services v. Member Source Media, LLC,*
2010 WL 1610066 (N.D. Cal. Apr. 20, 2010)..................................................42

*Asis Internet Services v. Subscriberbase Inc.,*
2010 WL 1267763 (N.D. Cal. Apr. 1, 2010)....................................................42

*Balsam v. Trancos, Inc.,*
138 Cal. Rptr. 3d 108 (Cal. Ct. App. 2012)......................................................42

*Bateman v. U.S. Postal Serv.,*
231 F.3d 1220 (9th Cir. 2000) ..........................................................................17

*Beyond Systems, Inc. v. Kraft Foods, Inc.,*
777 F.3d 712 (4th Cir. 2015) .....................................................................40, 41

*Brinton v. Vivint Inc.,*
No. 3:23-CV-06105-TMC,
2024 WL 3688589 (W.D. Wash. Aug. 7, 2024)..........................................32, 33

*Brown v. Old Navy, LLC,*
4 Wn.3d 580, 567 P.3d 38 (2025)..........................................................6, 41, 45

*Bruns v. National Credit Union Administration,*
122 F.3d 1251 (9th Cir. 1997) ................................................................1, 11, 14

*Byler v. City of Kodiak,*
No. 24-6991,
2026 WL 473539 (9th Cir. Feb. 19, 2026) .......................................................35

*Casillas v. Madison Ave. Assocs., Inc.,*
926 F.3d 329 (7th Cir. 2019) .....................................................................26, 27

*Davidson v. Kimberly-Clark Corp.,*
889 F.3d 956 (9th Cir. 2018) .....................................................................27, 28

*DeMartini v. DeMartini,*
  964 F.3d 813 (9th Cir. 2020) ...................................................................15

*Eichenberger v. ESPN, Inc.,*
  876 F.3d 979 (9th Cir. 2017) ...................................................................24

*Evans v. DSW, Inc.,*
  No. CV 16-3719-JGB (SPx),
  2017 WL 7058233 (C.D. Cal. Feb. 2, 2017) ..........................................45

*Fed. Election Comm'n v. Akins,*
  524 U.S. 11 (1998)...................................................................................25

*FW/PBS, Inc. v. City of Dallas,*
  493 U.S. 215 (1990).................................................................................30

*Gordon v. Virtumundo, Inc.,*
  575 F.3d 1040 (9th Cir. 2009) ...........................................................passim

*Hall v. Smosh Dot Com, Inc.,*
  72 F.4th 983 (9th Cir. 2023) ...................................................................24

*Harbers v. Eddie Bauer, LLC,*
  415 F. Supp. 3d 999 (W.D. Wash. 2019) ................................................32

*Harrington, et al. v. Vineyard Vines, LLC,*
  813 F. Supp.3d 1218 (W.D. Wash. Dec. 18, 2025)................................37

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982).................................................................................25

*Hinojos v. Kohl's Corp.,*
  718 F.3d 1098 (9th Cir. 2013) .....................................................29, 44, 45

*Hoang v. Reunion.com, Inc.,*
  2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ........................................42

*Hypertouch, Inc. v. Valueclick, Inc.,*
  123 Cal. Rptr. 3d 8 (Cal. Ct. App. 2011)....................................40, 42, 43

*Isbell v. Bebe Stores, Inc.,*
  No. 25-CV-2388-BJR,
  2026 WL 1172896 (W.D. Wash. Apr. 30, 2026) .....................................32

*Jackson, et al. v. Hanesbrands, Inc.,*
    No. 2:25-CV-00440-SAB,
    2026 WL 1161444 (E.D. Wash. Apr. 28, 2026)..................................................37

*Jerde v. Bylt LLC,*
    No. 2:25-CV-01496-JHC,
    2026 WL 415445 (W.D. Wash. Feb. 13, 2026)................................................37

*Juliana v. United States,*
    947 F.3d 1159 (9th Cir. 2020) .........................................................................34

*Kalwajtys v. F.T.C.,*
    237 F.2d 654 (7th Cir. 1956) ...........................................................................45

*Kemp v. United States,*
    596 U.S. 528 (2022).........................................................................................15

*Kempf v. FullBeauty Brands Operations, LLC,*
    No. 2:25-CV-01141-TSZ,
    2026 WL 395677 (W.D. Wash. Feb. 12, 2026)................................................37

*Lee v. Am. Nat'l Ins. Co.,*
    260 F.3d 997 (9th Cir. 2001) ....................................................................28, 29

*Leeson v. Transamerica Disability Income Plan,*
    671 F.3d 969 (9th Cir. 2012) ...........................................................................30

*Liss et al. v. Skechers USA Inc.,*
    No. 3:25-CV-05861-DGE,
    2026 WL 1392327 (W.D. Wash. May 19, 2026) ........................................33, 37

*Lupia v. Medicredit, Inc.,*
    8 F.4th 1184 (10th Cir. 2021) ..........................................................................24

*M.S. v. Brown,*
    902 F.3d 1076 (9th Cir. 2018) .........................................................................34

*Ma v. Nike, Inc.,*
    816 F. Supp. 3d 1227 (W.D. Wash. Jan. 14, 2026)...........................................37

*Nuri v. True Religion Apparel,*
    No. 2:25-CV-00690-LK,
    2026 WL 864886 (W.D. Wash. Mar. 30, 2026) ........................................ 22, 25, 33

*Omega World Travel, Inc. v. Mummagraphics, Inc.,*
469 F.3d 348 (4th Cir. 2006) ..................................................................38

*Polo v. Innoventions Int'l, LLC,*
833 F.3d 1193 (9th Cir. 2016) ..........................................................13, 14

*Popa v. Microsoft Corp.,*
153 F.4th 784 (9th Cir. 2025) ........................................................passim

*Powerex Corp. v. Reliant Energy Services, Inc.,*
551 U.S. 224 (2007)..................................................................................17

*Repperger v. Ulta Salon, Cosms. & Fragrance, Inc,*
No. 2:25-CV-00526-RLP,
2026 WL 1157157 (E.D. Wash. Apr. 28, 2026)......................................37

*Robins v. Spokeo, Inc.,*
867 F.3d 1108 (9th Cir. 2017) ................................................................24

*Smith v. Anastasia Inc.,*
2014 WL 12577598 (S.D. Cal. Sept. 15, 2014)......................................42

*Spiegel, Inc. v. F.T.C.,*
411 F.2d 481 (7th Cir. 1969) ..................................................................45

*Syed v. M-I, LLC,*
853 F.3d 492 (9th Cir. 2017) ..................................................................25

*Thermtron Products, Inc. v. Hermansdorfer,*
423 U.S. 336 (1976).......................................................................2, 12, 17

*Things Remembered, Inc. v. Petrarca,*
516 U.S. 124 (1995)..................................................................................15

*Thomas v. F.T.C.,*
116 F.2d 347 (10th Cir. 1940) ................................................................45

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021)..........................................................................passim

*Trichell v. Midland Credit Mgmt., Inc.,*
964 F.3d 990 (11th Cir. 2020) ..........................................................26, 27

*United States v. Asarco Inc.,*
430 F.3d 972 (9th Cir. 2005) ............................................................13, 17

*Van Patten v. Vertical Fitness Grp., LLC,*
    847 F.3d 1037 (9th Cir. 2017) ..................................................................24, 31

*Wagner v. Spire Vision,*
    No. C 13-04952 WHA,
    2014 WL 889483 (N.D. Cal. Mar. 3, 2014) ......................................................41

*Washington, et al. v. Ulta Salon, Cosms. & Fragrance, Inc.,*
    822 F. Supp. 3d 1223 (E.D. Wash. Feb. 27, 2026)..........................................37

*Wright v. Lyft, Inc.,*
    189 Wn.2d 718, 406 P.3d 1149 (2017)...............................................................6

## Statutes

15 U.S.C. § 7707 ....................................................................................... 36, 43

28 U.S.C. § 1291 ..............................................................................................3

28 U.S.C. § 1332 ..............................................................................................3

28 U.S.C. § 1447 ..................................................................................... passim

Cal. Bus. & Prof. Code § 17529.5 .......................................................................33

RCW 19.190.020.......................................................................................... 5, 36

## Regulations

16 C.F.R. § 233.1 ............................................................................................45

16 C.F.R. § 233.5 ............................................................................................45

## Rules

Circuit Rule 28-1............................................................................................35

FRAP 4............................................................................................................3

## Other Authorities

Aggarwal, P., Use it or lose it: Purchase acceleration effects of time-limited
    promotions, Journal of Consumer Behavior (Sept. 17, 2002)......................46

## **<u>INTRODUCTION</u>**

This case should be in state court right now, and these cross-appeals should not exist. The Court can and should resolve these cross-appeals with a single-paragraph decision.

Plaintiff-Appellee/Cross-Appellant Shawnna Montes filed her case in the Spokane County Superior Court. Defendants Penney OpCo LLC, Catalyst Brands LLC, and SPARC Group LLC (collectively, "Aéropostale") subsequently removed the case to federal court. On its own initiative, the District Court determined that it lacked subject matter jurisdiction over Ms. Montes's claims because she had not alleged a concrete injury sufficient to establish Article III standing. At this point, the District Court was required to remand the case back to state court. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case ***shall*** be remanded.") (emphasis added). "Section 1447(c) is mandatory, not discretionary." *Bruns v. National Credit Union Administration*, 122 F.3d 1251, 1257 (9th Cir. 1997). Instead, the District Court dismissed Ms. Montes's claims without prejudice. The District Court indisputably erred by doing this. The District Court then abused its discretion when it denied Ms. Montes's Motion for Reconsideration and refused to correct its error after being informed about the mandatory remand requirement.

Accordingly, this Court should enter an order reversing the District Court's Judgment and remanding this case with instructions to the District Court to further remand the case back to the Spokane County Superior Court. Correcting this error would dispense with both cross-appeals and obviate the need to address the issues Aéropostale raises in its cross-appeal. This is because Aéropostale is asking the Court to review the District Court's determination that it lacks subject matter jurisdiction, which is unreviewable in removed cases. *See* 28 U.S.C. § 1447 (d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise[.]"). Thus, once the case is correctly remanded to state court, the issue Aéropostale raises cannot be appealed. Congress enacted Section 1447(d) to protect plaintiffs who were dragged into federal court from wasting the time and resources defending an appeal on a jurisdictional issue. *See Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 351 (1976). This Court should keep with Congress's intent by issuing the order that Ms. Montes requests.

If the Court nevertheless reviews the District Court's determination that it lacks subject matter jurisdiction, that decision was correct. Aéropostale has failed its burden of showing that Ms. Montes alleged suffering a concrete injury to establish Article III standing. Thus, the Court should still order the District Court to remand the case back to state court.

## JURISDICTIONAL STATEMENT

Ms. Montes filed both her initial Complaint and the operative First Amended Complaint ("FAC") in the Spokane County Superior Court. ER-154; ER-88. Aéropostale removed the case to the U.S. District Court for the Eastern District of Washington. ER-153. Aéropostale based its removal on the removal provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). *See* ER-154.

Ms. Montes's appeal is timely filed under FRAP 4(a)(4)(A)(vi). The District Court entered its dismissal order and judgment on December 4, 2025. ER-4–5. Ms. Montes's filed her motion for reconsideration on December 5, 2025. ER-18. The District Court denied her motion for reconsideration on January 8, 2026. ER-16. Ms. Montes filed her notice of appeal the same day, appealing the dismissal order, the judgment, and order denying her motion for reconsideration. ER-172. This Court has jurisdiction over Ms. Montes's appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Ms. Montes's appeal presents two issues for review:

**Issue One**: Ms. Montes filed her case in state court, and Aéropostale removed it. The District Court determined that it lacked subject matter jurisdiction over Ms. Montes's claims. Upon making that determination, did the District Court err when it dismissed Ms. Montes's claims without prejudice instead of remanding the case to state court pursuant to 28 U.S.C. § 1447(c)? **Yes.**

3

**Issue Two**: Ms. Montes filed a Motion for Reconsideration asking the District Court to remand the case as required by 28 U.S.C. § 1447(c). Did the District Court abuse its discretion when it denied Ms. Montes's Motion for Reconsideration? **Yes.**

The Court can resolve these cross-appeals by ruling on these two issues and ordering the District Court to remand the case as it was required to do. If the Court nevertheless reaches the issues in Aéropostale's cross-appeal, those two issues are:

**Issue Three**: Did Aéropostale, as the removing party, fail its burden of showing that Ms. Montes alleged suffering a concrete injury to establish Article III standing, such that the District Court correctly determined that it lacked subject matter jurisdiction? **Yes.**

**Issue Four**: Aéropostale argued in its Motion to Dismiss that Ms. Montes's CEMA claims were preempted by CAN-SPAM, and Aéropostale now asks the Court to affirm the District Court's dismissal based on those arguments. Assuming the Court considers this issue despite not being properly raised, are Ms. Montes's CEMA claims preempted by CAN-SPAM? **No.**

4

## STATEMENT OF THE CASE

Ms. Montes's appeal arises from the District Court's refusal to remand the case after finding a lack of subject matter jurisdiction.

### A.     Factual Allegations

Ms. Montes brings claims against Aéropostale for violating Washington's Commercial Electronic Mail Act ("CEMA") by sending her and other Washington residents marketing emails containing materially false or misleading information in their subject lines. *See* ER-89–91; RCW 19.190.020(1)(b) ("No person may initiate the transmission . . . of a commercial electronic mail message . . . to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that . . . [c]ontains false or misleading information in the subject line.").

Aéropostale is a retail seller of casual clothing. As alleged in the FAC, Aéropostale has engaged in an extensive false discount advertising scheme in its retail stores and on its website, whereby Aéropostale advertises perpetual storewide and sitewide "sales" and percentage-off discounts. ER-89. An important part of Aéropostale's false discount advertising scheme is to send a constant stream of marketing emails to consumers that prominently advertise these false discounts in their subject lines. ER-90. Specifically, the email subject lines advertised false discounts, false "free" offers, and fake limited-time sales that were actually perpetual. ER-90, 99–105.

5

The Washington Supreme Court recently held that CEMA "prohibits sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 567 P.3d 38, 47 (2025) (emphasis in original). This includes false or misleading information about promotions, sales events, or discounts. *Id.*

"A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Id.* at 42. This means that the mere receipt of a violative email satisfies all elements of a CPA claim and allows the recipient of that email to seek statutory damages without any allegations of injury or reliance. *Id.*; *see also Wright v. Lyft, Inc.*, 189 Wn.2d 718, 406 P.3d 1149, 1151 (2017) ("[B]ecause [CEMA] provides automatic damages for violations without condition, injury and causation do not need to be proved to receive damages.").

The FAC alleges two causes of action. Count I alleges that Aéropostale violates CEMA and pleads the violation as a *per se* violation of the CPA. ER-108–14. Count II pleads a stand-alone violation of CEMA. ER-114–15.

Ms. Montes alleges the FAC on behalf of herself individually, as a private attorney general, and/or as the proposed representative of a putative class of others similarly situated. *See* ER-106, 115.

### B.    Procedural History

On July 1, 2025, Ms. Montes filed her initial Complaint in the Spokane County Superior Court. *See* ER-154. On July 16, 2025, she filed the operative First Amended Complaint. ER-88.

#### 1.    Aéropostale Removes The Case And Then Files A Motion To Dismiss.

On August 1, 2025, Aéropostale removed the case to the District Court. ER-153. On September 16, 2025, Aéropostale filed its Motion To Dismiss the FAC. ER-58. Aéropostale argued, *inter alia*, that Ms. Montes's claims predicated upon CEMA were preempted by the federal CAN-SPAM Act, 15 U.S.C. § 7701 *et seq*. *See* ER-71–80. In making this argument, Aéropostale asserted that Ms. Montes does not allege "that she was injured … in any way." ER-65. Aéropostale emphasized that Ms. Montes's complaint "omit[s] any allegations of actual harm," such as that "she made any shopping decision to her detriment based on the allegedly inflated discounts or promotional period advertised" or that "she ever noticed or opened any of the allegedly violative emails." ER-76–77.

Ms. Montes did not—and does not—dispute Aéropostale's assertion that she has not alleged an injury; nor is she required to do so to bring a CEMA claim.

7

### 2. The District Court Dismisses The Case Without Prejudice For Lack Of Subject Matter Jurisdiction.

Without hearing oral argument, the District Court issued its Order On Defendants' Motion To Dismiss First Amended Complaint ("Dismissal Order") on December 4, 2025. ER-5–15. In the Dismissal Order, the District Court concluded that it lacked subject matter jurisdiction over Ms. Montes's claims because she did not allege a concrete injury, which is required for Article III standing. ER-9–13. "The Court fails to see how receiving an email with a misleading or false subject line harmed Plaintiff in a concrete manner that would rise to the level required for standing." ER-11. "[T]he mere receipt of misleading or false subject lines in emails does not, by itself, constitute an injury." ER-11. "Therefore, there is not a concrete harm to confer standing." ER-13.

The District Court also held that, for Ms. Montes's injunctive relief remedy, the third standing element—redressability—had not been met specifically because there was no injury to be redressed. ER-13–14.

The District Court then proceeded to dismiss Ms. Montes's claims without prejudice for lack of subject matter jurisdiction. ER-15. Later the same day, the District Court entered a defense Judgment. ER-4.

8

### 3.   The District Court Denies Ms. Montes's Motion For Reconsideration To Have The Case Remanded.

On December 5, 2025, Ms. Montes filed a Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 60(b), in which she requested that the court reconsider and amend its Dismissal Order (and vacate the Judgment) so as to remand the case to state court. ER-18–22. In her motion, Ms. Montes directed the District Court's attention to 28 U.S.C. § 1447(c), which requires a district court to remand a removed action upon finding a lack of subject matter jurisdiction. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded.") (emphasis added). ER-19. Ms. Montes also provided case law from this Court and the Supreme Court confirming Section 1447(c)'s mandatory nature. ER-19.

Without holding oral argument, the District Court denied the Motion for Reconsideration on January 8, 2026. ER-16–17. The District Court provided no explanation for its denial. The District Court just stated: "Here, the Court has fully addressed the issues and the Court's Order stands." ER-17.

While the Motion for Reconsideration was pending, Aéropostale filed its Notice of Appeal, which is docketed as No. 25-8045. ER-167. After the District Court denied reconsideration, Ms. Montes immediately filed her Notice of Appeal, which is docketed as No. 26-241. ER-172.

9

### 4. Ninth Circuit Procedural History

On January 27, 2026, Ms. Montes filed a Motion For Summary Disposition, asking the Court to summarily reverse the Judgment on the grounds that the District Court was required by 28 U.S.C. § 1447(c) to remand the case to state court as soon as the District Court had concluded that no subject matter jurisdiction existed. Dkt. 10 (No. 26-241); Dkt. 18 (No. 25-8045). The parties briefed the motion. Dkt. 11, 15 (No. 26-241); Dkt. 19, 23 (No. 25-8045). On February 27, 2026, the Court ruled, "The motion . . . for summary disposition is denied without prejudice to raising the arguments in the second brief on cross-appeal." Dkt. 18 (No. 26-241); Dkt. 26 (No. 25-8045). That is what Ms. Montes is now doing.

On April 27, 2026, Aéropostale filed its Opening Brief and its Excerpts Of Record. Dkt. 27, 28 (No. 26-241); Dkt. 35, 36 (No. 25-8045). On the same day, Aéropostale filed its Motion For Judicial Notice. Dkt. 26 (No. 26-241); Dkt. 34 (No. 25-8045).[1]

---

[1] The Court should deny Aéropostale's Motion For Judicial Notice as irrelevant. In that motion, Aéropostale requests that this Court take judicial notice of eight documents filed in different lawsuits between Ms. Montes and Aéropostale that alleged violations of a different law (the Washington Consumer Protection Act as opposed to the instant action under CEMA). In the Opening Brief, none of Aéropostale's arguments relies upon these documents; the documents are cited as irrelevant background information that does not impact the outcome of these cross-appeals. OB 14–16. *See Cuellar v. Joyce*, 596 F.3d 505, 512 (9th Cir. 2010) ("request for judicial notice is denied, as the materials contained therein are not relevant to the disposition of this appeal").

## SUMMARY OF THE ARGUMENT

The District Court determined that it lacked subject matter jurisdiction over Ms. Montes's claims because she had not alleged a concrete injury sufficient to establish Article III standing. At this point, the District Court was required to remand the case back to the Spokane County Superior Court. 28 U.S.C. § 1447(c). "Section 1447(c) is mandatory, not discretionary." *Bruns v. National Credit Union Administration*, 122 F.3d 1251, 1257 (9th Cir. 1997). Instead, the District Court dismissed Ms. Montes's claims without prejudice. The District Court indisputably erred by doing this.

The District Court then abused its discretion when it refused to fix this error in response to Ms. Montes filing a Motion for Reconsideration. Rather than fix the error, the District Court exclaimed that "a court should be 'loathe' to revisit its own decisions 'in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" ER-16–17. By refusing to even consider Ms. Montes's Motion for Reconsideration in good faith, the District Court further abused its discretion.

Moreover, the District Court's decision to dismiss rather than remand was "clearly erroneous," since Section 1447(c) and this Court's precedent make clear that this is mandatory. And the District Court's decision "would work a manifest injustice" by forcing Ms. Montes to waste time and resources on an appeal that

11

should not exist, all while delaying her case by over a year. This appeal should not exist because a district court's determination that it lacks subject matter jurisdiction is not reviewable in removed cases. *See* 28 U.S. C. § 1447(d). Section 1447(d) was enacted to protect plaintiffs who were dragged into federal court from wasting the time and resources defending an appeal on a jurisdictional issue. *See Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 351 (1976).

This Court should correct the District Court's error by remanding the case with orders instructing the District Court to remand the case to state court. Doing so would obviate the need to address the issues raised by Aéropostale in its cross-appeal and would keep with Congress's intent that these types of decisions are unreviewable.

If the Court nevertheless considers the standing issue Aéropostale raises, the result remains the same: the case must be remanded to state court because Aéropostale has failed its burden of showing that Ms. Montes alleged a concrete injury sufficient to establish Article III standing.

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), is the most recent, relevant decision by the Supreme Court on the issue of standing for statutory violations. This Court understands *TransUnion* as commanding courts to determine whether an injury is "concrete" by matching the plaintiff's alleged injury with "the kinds of harms that were actionable at common law." *Popa v. Microsoft Corp.*, 153

F.4th 784, 789–90 (9th Cir. 2025). This means a court must compare the plaintiff's harm to the harm from a specific common-law tort. *Id.* at 791.

Aéropostale argues that the harm Ms. Montes suffered was receiving inaccurate information; however, Aéropostale does not contend that there is a common-law tort with an analogous harm. By failing to do this, Aéropostale has failed its burden of showing that a concrete harm exists.

Aéropostale also asks the Court to affirm the District Court's dismissal on the alternative grounds that her CEMA claims are preempted by CAN-SPAM. Assuming the Court reaches this issue (which it should not), Aéropostale is wrong. To avoid preemption, Ms. Montes only must allege that Aéropostale's email subject lines contained materially false or misleading information, which she has done. Courts have issued nearly a dozen orders in the recent months all concluding that CAN-SPAM does not preempt the types of CEMA claims Ms. Montes brings.

## STANDARD OF REVIEW

The Court reviews de novo the District Court's decision not to remand. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1195 (9th Cir. 2016). The Court reviews the District Court's refusal to reconsider its decision not to remand under Rule 60(b) for abuse of discretion. *United States v. Asarco Inc.*, 430 F.3d 972, 978 (9th Cir. 2005). If the Court reviews the District Court's determination that it lacks subject matter jurisdiction, that review is de novo. *See Popa*, 153 F.4th at 788.

13

## ARGUMENT

### I. THE DISTRICT COURT NEEDED TO REMAND THE CASE AFTER FINDING IT LACKED SUBJECT MATTER JURISDICTION

The District Court determined that it lacked subject matter jurisdiction over Ms. Montes's claims because she had not alleged a concrete injury sufficient to establish Article III standing. At this point, the District Court was required to remand the case back to the Spokane County Superior Court. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded.") (emphasis added). "Section 1447(c) is mandatory, not discretionary." *Bruns v. National Credit Union Administration*, 122 F.3d 1251, 1257 (9th Cir. 1997). "Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196.

Instead, the District Court dismissed Ms. Montes's claims without prejudice. The District Court indisputably erred by doing this. *See id.* at 1199; *Bruns*, 122 F.3d at 1257.

Furthermore, if the District Court had followed the law and remanded the case, these cross-appeals would not exist because Aéropostale would not have a right to appeal. "An order remanding a case to the State court from which it was

14

removed is not reviewable on appeal or otherwise[.]" 28 U. S. C. § 1447(d); *see also Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127–28 (1995) (same).

Congress intended for these types of determinations in removed actions to be unreviewable under any circumstance. "Congress undertook to exclude remand orders from [this Court's] review and anticipated that litigants might adopt an unusual posture in order to raise their grievance before the courts of appeals. For that reason, § 1447(d) states that '[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal *or otherwise*.' 28 U.S.C. § 1447(d) (emphasis added)." *DeMartini v. DeMartini*, 964 F.3d 813, 825 (9th Cir. 2020) (holding that § 1447(d) prohibits review of a remand order on petition for mandamus). The fact that we are here right now violates Congress's intent.

## II. THE DISTRICT COURT ABUSED ITS DISCRETION BY REFUSING TO RECONSIDER ITS DISMISSAL ORDER

Because the District Court was required to remand the case to state court, Ms. Montes filed a Motion for Reconsideration asking for this to be done. *See* ER-18–21. In her motion, she cited Section 1447(c) and this Court's decision in *Polo*, which both make clear that a remand is mandatory. ER-19. She also explained that Rule 60(b)(1) allows a district court to relieve a party from a judgment or order upon a showing that a "mistake" was made, which includes "a judge's errors of law." ER-21 (citing *Kemp v. United States*, 596 U.S. 528, 533–34 (2022)).

15

Rather than quickly fix its error, the District Court denied Ms. Montes's Motion for Reconsideration. The District Court provided no explanation for its denial; instead, it just exclaimed that "a court should be 'loathe' to revisit its own decisions 'in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" ER-16–17 (citations omitted). The District Court then conclusorily stated: "Here, the Court has fully addressed the issues and the Court's Order stands." ER-17.

But the District Court's decision to dismiss rather than remand was "clearly erroneous," since the statute and precedent make clear that this is mandatory. The District Court's decision also "would work a manifest injustice" in two ways. First, if the decision stood, it would wipe out a large portion of Ms. Montes's claims and the putative class's claims because of the statute of limitations. Second, by not remanding the case, Ms. Montes is forced to waste time and resources on this appeal that should not exist, all while delaying her case by over a year.

This second injustice is something that Congress specifically sought to prevent when it enacted Section 1447. "Section 1447(d) reflects Congress's longstanding policy of not permitting interruption of the litigation of the merits of a removed case by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed. Appellate courts must take that jurisdictional prescription seriously, however pressing the merits of the appeal might seem."

16

*Powerex Corp. v. Reliant Energy Services, Inc.*, 551 U.S. 224, 238–39 (2007) (quotation marks and citation omitted); *see also Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 351 (1976) ("There is no doubt that in order to prevent delay in the trial of remanded cases by protracted litigation of jurisdictional issues, Congress immunized from all forms of appellate review any remand order issued on the grounds specified in § 1447(c), whether or not that order might be deemed erroneous by an appellate court.") (citation omitted).

"Motions for relief from judgment under Rule 60(b) are reviewed for abuse of discretion." *United States v. Asarco Inc.*, 430 F.3d 972, 978 (9th Cir. 2005). "A district court abuses its discretion if it does not apply the correct law[.]" *Id.* (internal quotation marks and citations omitted). Under Section 1447(c) and this Court's precedent, the District Court was required to remand the case to state court; thus, the District Court abused its discretion when it refused to do so.

Further, the District Court also abused its discretion when it refused to even consider Ms. Montes's Motion for Reconsideration in good faith on the grounds that a district court loathes to revisit its decisions. *See Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000) (holding that the district court abused its discretion because it failed to properly address the issue presented in the motion for reconsideration).

17

## III. THE DISTRICT COURT CORRECTLY CONCLUDED THAT THERE WAS A LACK OF ARTICLE III STANDING.

To establish Article III standing, "(1) the plaintiff must have suffered an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent'; (2) 'there must be a causal connection between the injury and the conduct complained of' (often described as whether the injury is 'fairly traceable' to the challenged conduct); and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

As the party invoking federal jurisdiction, Aéropostale bears the burden of showing that standing exists. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). As discussed below, Aéropostale has failed its burden because it has not shown that Ms. Montes suffered a "concrete" injury caused by its misconduct. The District Court therefore did not err when it found that it lacked subject matter jurisdiction for this reason.

Separately, the District Court held that, for Ms. Montes's injunctive relief remedy, the third standing element—redressability—had not been met. ER-13–14. While the District Court's ruling ultimately has no effect on the end result because there is already a lack of standing without a concrete injury, the District Court erred on this point, and this error should be corrected.

18

### A. Article III Requires There To Be A Concrete Injury.

An injury that is "concrete" under Article III is one that is "real, and not abstract." *TransUnion*, 594 U.S. at 424. Because Article III has been part of the Constitution since its inception, "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." *Id.* Accordingly, when determining whether an injury is "concrete," courts should assess "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* Tangible harms, such as physical harms and monetary harms, easily qualify as concrete injuries. *Id.* at 425. Certain intangible harms can also qualify as concrete injuries, but only those that have a close relationship to historical harms such as, "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

As relevant here, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 426 (citation omitted). A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Put differently, a concrete injury cannot simply be enacted into existence. "Article III grants federal courts the power to redress harms that

19

defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.* at 427.

This Court understands *TransUnion* as identifying "history as the touchstone for concreteness," with a focus on matching the plaintiff's alleged injury with "the kinds of harms that were actionable at common law." *Popa*, 153 F.4th at 789–90. When analyzing decisions from other circuits, this Court found that they "all share an important feature: they look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Id.* at 791. In short, "*TransUnion* contemplates a standing inquiry particularized to a plaintiff's circumstances and benchmarked to a specific tort." *Id.*

The Court did this in *Popa* when it compared the plaintiff's alleged harm to the harms that occurred in the common-law torts of intrusion upon seclusion and public disclosure of private facts. *Id.* The harms that gave rise to those torts were "highly offensive" interferences or disclosures. *Id.* By contrast, the plaintiff's harm did not involve anything that could be considered "highly offensive." *Id.* Thus, the Court held that the plaintiff's harm was not analogous to these common-law tort harms, and the plaintiff therefore lacked standing. *Id.*

**B.** **Aéropostale Failed Its Burden Of Showing That Ms. Montes Alleged Suffering A Concrete Injury.**

As the party invoking federal jurisdiction, Aéropostale bears the burden of showing that standing exists. *TransUnion*, 594 U.S. at 430–31.

Aéropostale's Notice of Removal does not address Article III's standing requirements at all, let alone identify what Article III injury is present in the case. *See* ER-153–164.

Once the case was removed, Aéropostale proceeded to file a Motion to Dismiss where it argued, *inter alia*, that Ms. Montes does not allege "that she was injured … in any way." ER-65. Aéropostale first explained that a plaintiff may maintain a CEMA claim "***regardless of whether the plaintiff suffered any injury caused by the challenged representation***." ER-75 (emphasis in original). Then, in a paragraph titled, "**Injury**," Aéropostale argued that "Plaintiff pleads none." ER-76. Aéropostale emphasized that Ms. Montes's complaint "omit[s] any allegations of actual harm," such as that "she made any shopping decision to her detriment based on the allegedly inflated discounts or promotional period advertised" or that "she ever noticed or opened any of the allegedly violative emails." ER-76–77. Aéropostale reiterated this point two pages later: "Plaintiff fails to plead . . . that she suffered any actual harm[.]" ER-80.

In a recent CEMA case, a district court ordered a remand when faced with similar assertions by the defendant that the plaintiff failed to allege "that she saw

21

the emails when they arrived, opened them, relied upon them, or was injured in any way by them." *Nuri v. True Religion Apparel*, No. 2:25-CV-00690-LK, 2026 WL 864886, at *2 (W.D. Wash. Mar. 30, 2026). The court found that these assertions "essentially concede that [the plaintiff] lacks Article III standing." *Id.* at *3.

The same is true here. On this record, Aéropostale has failed to affirmatively establish the existence of a concrete injury, and in fact, has taken the position that the complaint does not allege an injury. Because Aéropostale failed its burden of establishing Article III standing, the District Court did not err in finding a lack of subject matter jurisdiction for this reason.

**C.     Aéropostale's New Injury Argument On Appeal Is Unpersuasive.**

On appeal, Aéropostale now argues that Ms. Montes has suffered an injury in the form of receiving inaccurate information. Specifically, Aéropostale asserts that a plaintiff suffers a concrete injury anytime "a statute creates a substantive entitlement to receive accurate information, and a plaintiff alleges deprivation of that statutory right." OB 12. Aéropostale is wrong.

The Supreme Court has already rejected the assertion that a concrete injury automatically exists "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion*, 594 U.S. at 426. This Court has also rejected this argument. *Popa*, 153 F.4th at 792 (rejecting the plaintiff's argument that "because the Pennsylvania legislature

enacted a statute protecting a substantive privacy right, any plaintiff alleging a violation of that statute will satisfy Article III"). *Popa* explained that this analysis "reverts to a pre-*TransUnion* (even pre-*Spokeo*) approach that favors a legislative body's views in the aggregate over a plaintiff's individual circumstances," and that "*TransUnion* clearly cautions courts not to 'treat an injury as 'concrete' for Article III purposes based only on Congress's say-so.'" *Id.*

Instead, to determine if a concrete injury exists, courts post-*TransUnion* compare the plaintiff's harm to the harm from a specific common-law tort. *Id.* at 791. Aéropostale, however, does not contend that there is a common-law tort with a harm analogous to the harm of receiving inaccurate information. By failing to do this, Aéropostale has failed its burden of showing that a concrete injury exists.

Additionally, the fact that the "harm of receiving inaccurate information" may be considered an "informational injury" does not change the analysis because "an asserted informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion*, 594 U.S. at 442. Aéropostale does not contend that Ms. Montes suffered any adverse effects from receiving the inaccurate information. Again, Aéropostale's Motion to Dismiss is replete with assertions that Ms. Montes has suffered no harm.

The cases Aéropostale cites in which the court found a concrete injury are all distinguishable.

23

First, Aéropostale cites a number of decisions in which the identified harm was explicitly compared to a common-law tort. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (recognizing that the Video Privacy Protection Act was enacted to protect the "right to privacy" in a specific context, and that "[v]iolations of the right to privacy have long been actionable at common law"); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113–14 (9th Cir. 2017) (recognizing that the Fair Credit Reporting Act aims to "protect consumer privacy," and that the alleged harms "resemble other reputational and privacy interests that have long been protected in the law," such as the common-law torts of defamation and libel); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021) (holding that the defendant who violated the Fair Debt Collection Practices Act when it called the plaintiff after receiving a cease-and-desist letter caused the plaintiff concrete harm because "the phone call poses the same *kind* of harm recognized at common law— an unwanted intrusion into a plaintiff's peace and quiet").

Aéropostale also tries to compare Ms. Montes's CEMA claims to claims brought under the Telephone Consumer Protection Act (TCPA), however those cases involved *unsolicited* telemarketing calls or texts. *See Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983 (9th Cir. 2023); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017). "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their

24

recipients." *Van Patten*, 847 F.3d at 1043. But the harm only occurs "absent consent," e.g., when the calls and texts are *unsolicited*. *Id.* In such cases, the harm is analogous to the common law torts of nuisance or invasion of privacy. *See id.*

CEMA violations, however, are not limited to unsolicited emails. And because Ms. Montes agreed to receive Aéropostale's marketing emails, she has not alleged any harm analogous to the common law torts of invasion of privacy or nuisance. *See Nuri*, 2026 WL 864886, at *3 (CEMA plaintiff's harm not analogous to injuries sounding in nuisance because such injuries require "real and appreciable interference" and "must be unsolicited").

Aéropostale also cites several cases that involve mandatory disclosure statutes and are therefore inapposite. *See* OB 16 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) ("*Akins*"); *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373–374 (1982); *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017). As the *Akins* Court explained, when a statute requires certain information to be disclosed, "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain [that] information." 524 U.S. at 21 (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373–374 (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing)). *See also Syed*, 853 F.3d at 499 (statute required "prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process").

25

However, CEMA is not a mandatory disclosure statute. CEMA does not require certain information to be provided or disclosed; it only prohibits information in an email's subject line from being false or misleading. The Supreme Court in *TransUnion* rejected the plaintiffs' reliance on *Akins* and other mandatory disclosure cases because the plaintiffs "did not allege that they failed to receive any required information." 594 U.S. at 441. These cases do not control here for the same reason: Ms. Montes does not allege that she failed to receive any required information (namely because no information is required by CEMA).

Aéropostale also quotes cherry-picked language from *Havens Realty* about "a legal right to truthful information about available housing" under the Fair Housing Act for the proposition that a concrete injury occurs any time a person receives false information in violation of a statute. *See* OB 13. This argument has already been rejected by other circuits. *See Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 338 (7th Cir. 2019); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1003 (11th Cir. 2020).

In both *Casillas* and *Trichell*, the plaintiffs cited *Havens Realty* when arguing that they suffered "informational injuries" in the form of not receiving truthful information. Both courts rejected this argument and distinguished *Havens Realty*. The *Casillas* Court explained that "the bare harm of receiving inaccurate or incomplete information is not the harm that the plaintiff in *Havens Realty* alleged."

926 F.3d at 338. Rather, the plaintiff "claimed the harm of being lied to because of her race," which was an invasion of her "freedom from racial discrimination in the pursuit of housing." *Id.* The *Trichell* Court further explained that this kind of racial discrimination is an intangible concrete injury because "it protects the weighty interest in not being subjected to racial discrimination, which can inflict a concrete injury on anyone who 'personally' experiences it." 964 F.3d at 1003.

Finally, Aéropostale claims that this Court recognized this form of harm as a concrete injury in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). This is incorrect. Only the plaintiff argued that her concrete injury was the defendant's false advertising threatening her "statutory right to receive truthful information." *Id.* at 966. This Court, however, did "not reach [plaintiff's] alternative statutory standing argument" because the plaintiff suffered a concrete injury a different way. *Id.* at 967.

The *Davidson* Court held that a plaintiff seeking to enjoin false advertising may allege a concrete injury in two ways. "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and *so will not purchase the product although she would like to*. In other cases, the threat of future harm may be the consumer's plausible allegations that *she might purchase the product in the future*, despite the fact it was once marred by false advertising or labeling, *as she*

27

***may reasonably, but incorrectly, assume the product was improved***." *Id.* at 969–70 (emphasis added). As emphasized in the above quote, the first injury is the plaintiff not purchasing something that she wants because of the defendant's false advertising, and the second injury is the plaintiff suffering monetary harm from purchasing the falsely advertised product again because she incorrectly believed that the defendant had changed its practices.

While both of these informational injuries satisfy Article III because they cause adverse effects (*TransUnion*, 594 U.S. at 442), Ms. Montes has not alleged either of these injuries. She does not allege the possibility of suffering any monetary harm from receiving Aéropostale's marketing emails. And Aéropostale's misconduct has not prevented Ms. Montes from receiving Aéropostale's marketing emails, which she continues to receive. *See* ER-105.[2]

Aéropostale's misinterpretation of *Davidson* is further demonstrated by this Court's decision in *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997 (9th Cir. 2001). Both *Davidson* and *Lee* involved false advertising claims under California's Unfair Competition Law (UCL) and False Advertising Law (FAL). However, *Lee* was

---

[2] Moreover, even if Ms. Montes chose not to receive Aéropostale's marketing emails until Aéropostale had changed its practices, this injury would only be relevant to her standing to seek injunctive relief, not her request for retrospective damages. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 594 U.S. at 431. "Therefore, a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages." *Id.* at 436.

28

decided when the UCL and FAL allowed a plaintiff to bring a false advertising claim without showing a personal injury, which was the case for the *Lee* plaintiff.[3] The *Lee* plaintiff had purchased a falsely advertised life insurance policy from one defendant but also sued a second defendant, ANTEX, who engaged in similar false advertising even though he never purchased a policy from ANTEX. *Id.* at 999. The Court held that the plaintiff "cannot proceed with his claims against ANTEX in federal court" because, even though the plaintiff had a "right under California law to challenge the company's allegedly unfair business practices … he suffered no individualized injury as a result of the defendant's challenged conduct." *Id.* at 1001. Specifically, the plaintiff could not demonstrate a concrete injury "because he did not buy any policy from ANTEX and so did not suffer any injury due to ANTEX's conduct." *Id.* at 1002.

If *Davidson* had held that the "deprivation of the statutory right to receive truthful information" under the UCL and FAL constituted a concrete injury, then the *Lee* plaintiff would have had standing. However, the *Lee* Court held that more was required than just seeing false advertising and challenging it under state law.

---

[3] This was changed in 2004 when "the voters of California passed Proposition 64, which restricts standing for individuals alleging UCL and FAL claims to persons who 'ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013).

### D. This Court Has Never Considered Whether The Type Of Allegations In This Case Establish An Article III Injury.

Aéropostale argues that this Court "implicitly found Article III standing for an alleged injury under CEMA in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009)." OB 17. Aéropostale is wrong for multiple reasons.

First, *Gordon* is irrelevant because the issue of standing was never raised by the parties or considered by the Court. Aéropostale asks this Court to assume *Gordon* determined standing existed because courts must satisfy themselves of their jurisdiction. But just because courts must do this does not mean that it always happens. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230 (1990) (finding that petitioners failed to show they had standing to challenge certain statutory provisions after observing that "[n]either the District Court nor the Court of Appeals determined whether petitioners had standing to challenge any particular provision of the ordinance"). In fact, this Court made this observation in *Popa* when rejecting a similar argument: "Of course, we have an independent obligation to assure ourselves of our jurisdiction, but our statements touching on an issue that was not clearly presented are not entitled to the same weight as carefully reasoned analysis of the issue." 153 F.4th at 793; *see also Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 979 (9th Cir. 2012) ("We have ... specifically noted that drive-by jurisdictional rulings lack precedential force.") (citations omitted).

30

Second, *Gordon* is inapposite because the "case addresses ***unsolicited*** commercial e-mail." 575 F.3d at 1044 (emphasis added). As this Court explained with TCPA claims, when the conduct is unsolicited, the plaintiff suffers harm analogous to the kind of harm that gives rise to nuisance or invasion of privacy claims. *See Van Patten*, 847 F.3d at 1043. Thus, even if the Court had silently found standing, this would have likely been the reason. By contrast, Aéropostale's marketing emails were solicited, so Ms. Montes did not suffer this kind of harm.

Third, *Gordon* is irrelevant because the case involved the violation of a different CEMA provision and was based on different factual allegations. *See* 575 F.3d at 1058 (explaining that the plaintiff's "sole remaining CEMA claim" that must be addressed is for an alleged violation of RCW 19.190.020(1)(a) based on the headers of defendant's emails "misrepresent[ing] or obscure[ing] the identity of the sender"). Article III standing is not determined statute-by-statute. Whether a plaintiff has standing for her own claims is determined by her factual allegations and whether those allegations show that she suffered a concrete injury caused by the defendant. Thus, the question is not whether a plaintiff can allege a concrete injury based on any CEMA violation; rather, the question is whether Ms. Montes's own allegations demonstrate a concrete injury for her CEMA claims.

31

In addition to *Gordon*, Aéropostale also cites rulings by two district courts which found that a CEMA plaintiff had standing. OB 19–20 (citing *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999 (W.D. Wash. 2019); *Brinton v. Vivint Inc.*, No. 3:23-CV-06105-TMC, 2024 WL 3688589 (W.D. Wash. Aug. 7, 2024)).

*Harbers* is unpersuasive because the court engaged in a pre-*TransUnion* standing analysis in which the court did not compare the plaintiff's specific allegations of harm to a traditional harm under common law. Instead, the court found that CEMA was designed to protect Washington residents from the nuisance and loss of productivity related to responding to deceptive emails, and therefore, the plaintiff's alleged CEMA violations automatically constituted concrete harms ***despite the fact that the plaintiff did not allege personally suffering either of these harms***. *Harbers*, 415 F. Supp. 3d at 1010. While these harms may constitute concrete injuries, Article III requires the plaintiff to have personally suffered the harm, which the *Harbers* court disregarded. *See TransUnion*, 594 U.S. at 431; *see also Isbell v. Bebe Stores, Inc.*, No. 25-CV-2388-BJR, 2026 WL 1172896, at *2 (W.D. Wash. Apr. 30, 2026) (finding that, while violative emails "may waste consumers' time, divert attention, and influence purchasing behavior," the plaintiffs did not allege that they personally "(1) opened or read the emails, (2) relied on the subject lines, (3) expended time reviewing the emails, or (4) suffered any concrete, particularized harm beyond the mere receipt of the messages").

32

Beyond this, courts have also distinguished *Harbers* on the grounds that the plaintiff alleged a harm by alleging she "was deceived by Eddie Bauer's e-mails." *See Nuri*, 2026 WL 864886, at *3 n.4 (distinguishing *Harbers* for this reason and also finding the case unpersuasive because it was pre-*TransUnion*). By contrast, Ms. Montes does not allege being deceived by Aéropostale's emails.

*Brinton* is inapposite because the court interpreted the plaintiff's allegations as him receiving *unsolicited* emails, which establishes a concrete injury because the harm is similar to "the foundational injuries to privacy and freedom from nuisance." 2024 WL 3688589 at *3; *see also Liss et al. v. Skechers USA Inc.*, No. 3:25-CV-05861-DGE, 2026 WL 1392327, at *3 (W.D. Wash. May 19, 2026).

Similarly, the cases that Aéropostale cites involving California's anti-spam statute (s*ee* OB 17–19) are inapposite because California's statute only provides a cause of action to a recipient of *unsolicited* emails, resulting in the same privacy and nuisance harms. *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii).

**E.      The District Court's Redressability Analysis Was Incorrect.**

Separately, the District Court held that, for Ms. Montes's injunctive relief remedy, the third standing element—redressability—had not been met. ER-13–14. Because Aéropostale failed its burden of showing a concrete injury to establish standing, this secondary ruling has no practical effect. That said, this ruling was incorrect and should be rectified.

33

The District Court's reasoning was premised on the fact that there was no concrete injury so there was nothing to be redressed: "Plaintiff requests an injunction to prevent Defendants from sending additional misleading or false information in their email subject lines. If receipt of an email is not a concrete injury, then this request for remedy is not a solution. An injunction will not remedy any harm because there is not an alleged concrete harm to remedy." ER-14. This rationale, however, is circular and is not the correct way to analyze redressability.

This Court has established a two-prong test for redressability: a plaintiff must show that the relief sought is both "(1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020).

Additionally, when analyzing redressability, a court must assume that the injury-in-fact and causation elements are met. *Id.*; *see also M.S. v. Brown*, 902 F.3d 1076, 1083 & n.8 (9th Cir. 2018). This prevents the type of circular reasoning that the District Court engaged in.

Here, if receiving Aéropostale's deceptive emails constituted a concrete injury, then an injunction preventing Aéropostale from continuing to do this in the future would redress the threat of that future harm (e.g., receiving future deceptive emails). And no one disputes that this injunction is within the district court's power to award. Thus, the redressability element is met.

34

## IV.    MS. MONTES'S CEMA CLAIMS ARE NOT PREEMPTED

Aéropostale asks the Court to affirm the District Court's dismissal on the alternative grounds that her CEMA claims are preempted by CAN-SPAM. As an initial matter, the Court should not consider this issue because Aéropostale failed to properly raise it. Rather than argue its position in its brief, Aéropostale attempts to incorporate by reference its ten-page preemption argument from its Motion to Dismiss. *See* OB 23–24. However, this is prohibited by Circuit Rule 28-1(b), which states: "Parties must not append or incorporate by reference briefs submitted to the district court … or refer this Court to such briefs for the arguments on the merits of the appeal."

The Court should enforce its rule and should not consider any of the arguments made in Aéropostale's Motion to Dismiss. The Court should likewise reject any attempt by Aéropostale to raise these arguments in its reply brief. *See Byler v. City of Kodiak*, No. 24-6991, 2026 WL 473539, at *1 (9th Cir. Feb. 19, 2026) ("We do not consider matters not specifically and distinctly raised and argued in the opening brief.").

With that said, Aéropostale is wrong: Ms. Montes's CEMA claims are not preempted. Nearly a dozen rulings have come out on this issue in the last several months, and courts are in unanimous agreement that CAN-SPAM does not preempt the types of CEMA claims that Ms. Montes brings.

35

### A. CAN-SPAM Does Not Preempt CEMA Claims Based On Materially False Or Misleading Email Subject Lines.

Ms. Montes alleges that Aéropostale violated CEMA by sending her and other Washington residents marketing emails containing materially false or misleading information in their subject lines. *See* ER-89–91; *see also* RCW 19.190.020 (1)(b). Because her CEMA claims are based on materially false or misleading email subject lines, they are not preempted by CAN-SPAM.

CAN-SPAM regulates commercial email at the federal level. CAN-SPAM, in part, "imposes requirements regarding content, format, and labeling" for commercial email. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1048 (9th Cir. 2009). CAN-SPAM has a preemption provision that includes a savings clause which expressly saves certain state laws from preemption:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, ***except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message*** or information attached thereto.

15 U.S.C. § 7707(b)(1) (emphasis added).

This Court has also interpreted CAN-SPAM's savings clause as requiring the "falsity or deception" to be material. *Gordon*, 575 F.3d at 1061. Thus, to avoid preemption, Ms. Montes only must allege that Aéropostale's email subject lines contained materially false or misleading information—which she has done.

36

In the past several months, federal courts have issued nearly a dozen orders addressing this issue, with every court concluding that CAN-SPAM does not preempt CEMA claims based on materially false or misleading information. *See Liss et al. v. Skechers USA Inc.*, No. 3:25-CV-05861-DGE, 2026 WL 1392327, at *5–*6 (W.D. Wash. May 19, 2026); *Repperger v. Ulta Salon, Cosms. & Fragrance, Inc*, No. 2:25-CV-00526-RLP, 2026 WL 1157157, at *3 (E.D. Wash. Apr. 28, 2026); *Jackson, et al. v. Hanesbrands, Inc.*, No. 2:25-CV-00440-SAB, 2026 WL 1161444, at *2 (E.D. Wash. Apr. 28, 2026); *Agnew v. Macy's Retail Holdings, LLC*, No. 2:25-CV-02006-JHC, 2026 WL 764140, at *1 (W.D. Wash. Mar. 18, 2026); *Washington, et al. v. Ulta Salon, Cosms. & Fragrance, Inc.*, 822 F. Supp. 3d 1223, 1230–31 (E.D. Wash. Feb. 27, 2026); *Jerde v. Bylt LLC*, No. 2:25-CV-01496-JHC, 2026 WL 415445, at *1 (W.D. Wash. Feb. 13, 2026); *Kempf v. FullBeauty Brands Operations, LLC*, No. 2:25-CV-01141-TSZ, 2026 WL 395677, at *4 (W.D. Wash. Feb. 12, 2026); *Ma v. Nike, Inc.*, 816 F. Supp. 3d 1227, 1231–32 (W.D. Wash. Jan. 14, 2026); *Harrington, et al. v. Vineyard Vines, LLC*, 813 F. Supp.3d 1218, 1220 (W.D. Wash. Dec. 18, 2025).

Aéropostale ignores all of these cases in its brief and continues to make the same argument that has been rejected over and over again.

### B. A CEMA Plaintiff Does Not Need To Allege Every Element Of Common-Law Fraud To Avoid CAN-SPAM Preemption.

Aéropostale argues that, to avoid CAN-SPAM preemption, a plaintiff must allege every element of common-law fraud. OB 24. Aéropostale contends that Ms. Montes's CEMA claims are therefore preempted because she "failed to allege that she saw or relied upon any of the e-mails, or was injured due to such reliance"—e.g., she has not alleged the fraud elements of reliance and damages. OB 24. Aéropostale is wrong. Ms. Montes only needs to allege materiality to avoid preemption—which she has done. Allegations of reliance and damages are not required.

Aéropostale cites two cases to support its position, *Gordon v. Virtumundo*, 575 F.3d 1040 (9th Cir. 2009) and *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006). However, neither case supports the contention that claims under a state's anti-spam statute must incorporate all common-law fraud elements to avoid CAN-SPAM preemption.

In *Gordon*, this Court interpreted "falsity or deception" in CAN-SPAM's savings clause as imposing a materiality requirement. 575 F.3d at 1061. The Court reached this conclusion, in part, because it interpreted the word "deception" as requiring "something more than immaterial inaccuracies or inadvertent mistakes." *Id.* at 1062. And the two words together—falsity or deception—connoted a type of "tortious or wrongful conduct," which traditionally has required the conduct to be

material to a reasonable consumer. *Id.* The Court also supported its holding with CAN-SPAM's legislative history: "a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted[,] ... a State law prohibiting ***fraudulent or deceptive*** headers, ***subject lines***, or content in commercial e-mail ***would not be preempted***." *Id.* (quoting S. Rep. No. 108–102, at 21) (emphases added).

The Court also found that a materiality requirement would keep state laws in line with CAN-SPAM's own prohibitions against "*deceptive* subject line headings [and] *materially* false or *materially* misleading header information. *See* 15 U.S.C. § 7704(a); *accord* 15 U.S.C. § 7701(b)(2)." *Id.* at 1062 (emphasis in original). As such, "a materiality component comported with the policy pursued by the federal legislation as a whole." *Id.* at 1061. (Notably, while claims under CAN-SPAM require alleging materiality, they do not require alleging the other elements of common-law fraud, such as reliance or damages.)

In short, *Gordon* holds that a claim alleging materially false or deceptive conduct—i.e., making material misrepresentations—is saved from preemption. Because this is the full extent of *Gordon*'s holding, Aéropostale's reliance on the case is misplaced.

Aéropostale's reliance on *Omega* is likewise misplaced. In fact, the Fourth Circuit has since made clear that alleging every element of common-law fraud is **<u>not</u>** required to avoid preemption when it found both Maryland's and California's anti-spam statutes were saved from preemption. *See Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712 (4th Cir. 2015).

In *Beyond Systems*, the Fourth Circuit emphasized the centrality of state courts' interpretations of their own statutes. *Id.* at 717. For Maryland, it was enough to avoid preemption that an appellate court had said that violations of the anti-spam statute, "like violations of the Consumer Protection Act, are in the nature of a tort." *Id.* (internal quotation marks omitted). For California, the Fourth Circuit found that the appellate court in *Hypertouch, Inc. v. Valueclick, Inc.*, had "limited the application of California's anti-spam law to deceptive e-mails" when the *Hypertouch* court concluded that "the CAN–SPAM Act's savings clause applies to any state law that prohibits material falsity or material deception in a commercial e-mail[.]" *Beyond Systems*, 777 F.3d at 717 (quoting *Hypertouch, Inc. v. Valueclick, Inc.*, 123 Cal. Rptr. 3d 8, 29 (Cal. Ct. App. 2011)). The *Hypertouch* court continued by saying that this was true "regardless of whether such laws require plaintiff to prove and plead each and every element of common law fraud." 123 Cal. Rptr. 3d at 29. The express holding of *Hypertouch* is that California's anti-spam law does not require a plaintiff to allege reliance or damages. *Id.* at 21.

40

Relying on *Hypertouch*, the Fourth Circuit found that California's statute was in the vein of a tort and not preempted irrespective of the fact that reliance or damages is not required. 777 F.3d at 717.

If Aéropostale were correct that a state anti-spam law must incorporate the elements of a fraud claim to survive preemption, then *Beyond Systems* would have come out the other way, with California's statute preempted.

Just as Maryland and California courts had interpreted their statutes in a manner showing they were in the vein of a tort, so did the Washington Supreme Court when it held that CEMA prohibits only "false or misleading" subject lines. *See Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (2025). The Washington Supreme Court also held that the "mere puffery" standard developed in false advertising cases, which is plainly in the vein of a tort, applies to CEMA claims under RCW 19.190.020(1)(b). *Id.*

Notably, since *Gordon* was decided, every court in this Circuit to consider this issue has held that a plaintiff does not need to allege every element of common-law fraud to avoid CAN-SPAM preemption. In addition to the near dozen CEMA cases cited above, California courts have also reached the same conclusion when considering this issue in the context of California's anti-spam law. *See Wagner v. Spire Vision*, No. C 13-04952 WHA, 2014 WL 889483, at *3 (N.D. Cal. Mar. 3, 2014) ("The great weight of district court and state court decisions have

41

agreed that a showing of reliance and damages is not necessary.") (collecting cases); *Balsam v. Trancos, Inc.*, 138 Cal. Rptr. 3d 108, 122–23 (Cal. Ct. App. 2012) ("[T]he CAN–SPAM Act's savings clause applies to any state law that prohibits material falsity or material deception in a commercial e-mail regardless of whether such laws require plaintiff to prove and plead each and every element of common law fraud. The CAN-SPAM Act therefore [does] not preempt the plaintiff's state statutory claims … even though [the plaintiff's claims] do not require proof of three elements of common law fraud—scienter, reliance, and damages."); *Smith v. Anastasia Inc.*, 2014 WL 12577598, at *3 (S.D. Cal. Sept. 15, 2014); *Asis Internet Services v. Member Source Media, LLC*, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010); *Asis Internet Services v. Subscriberbase Inc.*, 2010 WL 1267763, at *12–13 (N.D. Cal. Apr. 1, 2010); *Hoang v. Reunion.com, Inc.*, 2010 WL 1340535, at *6 (N.D. Cal. Mar. 31, 2010).

*Hypertouch* persuasively explains why a rule tying CAN-SPAM preemption to whether a state anti-spam law incorporates the elements of fraud would not serve Congress's purpose. First, CAN-SPAM's "savings clause does not reference either fraud or the common law" but rather uses the words "falsity or deception." *Hypertouch*, 123 Cal. Rptr. 3d at 24; *Ma*, 816 F. Supp. 3d at 1231–32 ("Congress would have explicitly used the language of fraud in the CAN-SPAM Act if it intended to limit the exception to fraud alone.").

42

Second, the purpose of CAN-SPAM preemption is to avoid states putting unexpected or conflicting *content* requirements on email advertising. *Gordon*, 575 F.3d at 1063. Aéropostale's proposed rule would do nothing to serve that purpose because "[t]he elements of reliance and damages, for example, have nothing to do with the content of an e-mail." *Hypertouch*, 123 Cal. Rptr. 3d at 26. A state law "imposing strict liability for advertising in commercial e-mails that contain materially deceptive content does not alter the type of content that might subject a defendant to liability. Instead, it broadens the class of persons who may be held responsible for such content." *Id.*

States regularly pass laws in the vein of tort that do not incorporate every element of a particular tort claim. That is virtually every state consumer protection statute. Aéropostale's interpretation of CAN-SPAM's savings clause would lead to a nonsensical result: it would mean that state laws cannot regulate email communications unless those laws redundantly and precisely mirror a common law tort that already exists. That is not what CAN-SPAM's savings clause says. Instead, it says that states can enact and enforce "statutes" that prohibit "falsity or deception" in email communications. 15 U.S.C. § 7707(b)(1). The purpose of CAN-SPAM preemption is to avoid inconsistent content standards, not to protect corporations from liability for materially false or misleading email advertisements.

43

### C.     Ms. Montes Adequately Alleges Materiality.

To avoid preemption, *Gordon* only requires a plaintiff to allege that the defendant's misconduct was material. Ms. Montes has done this.[4]

The FAC alleges that Aéropostale sent commercial emails with subject lines containing materially false or deceptive information. Specifically, Aéropostale sent two types of violative emails: (1) emails with subject lines advertising materially false or misleading percentage-off discounts; and (2) emails with subject lines advertising materially false or misleading "free" offers. ER-99–105. The FAC further alleges that many of the emails were also materially false or misleading because they advertise the purported savings as being for a limited time when in fact the advertised savings are perpetual. ER-99.

These allegations are sufficient on a motion to dismiss because "the materiality of a misrepresentation is typically an issue of fact, and therefore should not be decided at the motion to dismiss stage." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 n.7 (9th Cir. 2013). That said, given the types of misrepresentations, the Court could easily decide that this information is material to consumers as a matter of law.

---

[4]     In its brief, Aéropostale does not argue that Ms. Montes failed to allege materiality. Instead, Aéropostale only mentions that it made this argument in its Motion to Dismiss and attempts to incorporate that argument into its brief. Because Aéropostale is prohibited from doing this by Circuit Rule 28-1(b), those arguments should be ignored. As such, Aéropostale has forfeited any argument that materiality has not been alleged.

Courts have repeatedly recognized that "a fictitious price or a fictitious claim of savings constitutes a material influence on the consumer's decision to purchase." *Spiegel, Inc. v. F.T.C.*, 411 F.2d 481, 483 (7th Cir. 1969); *see also Thomas v. F.T.C.*, 116 F.2d 347, 349 (10th Cir. 1940) ("The representation that an article is offered at one-half the regular price is a potent factor in effecting sales."); *Evans v. DSW, Inc.*, No. CV 16-3719-JGB (SPx), 2017 WL 7058233, at *9 (C.D. Cal. Feb. 2, 2017) ("[T]he Court can easily appreciate that discounts are material to the average shopper."); *Hinojos*, 718 F.3d at 1106 ("Misinformation about a product's 'normal' price is … significant to many consumers."). Notably, the Federal Trade Commission has long found pricing and discount misrepresentations to be materially deceptive and to have "the tendency and capacity to mislead and deceive a substantial portion of the purchasing public." *Kalwajtys v. F.T.C.*, 237 F.2d 654, 655–56 (7th Cir. 1956); *see also* 16 C.F.R. § 233.1, *et seq.*

Misrepresentations about time-limited savings are likewise material. In fact, the Washington Supreme Court has already stated that "the duration or availability of a promotion" is a representation of fact that "Washington residents would depend on in making their consumer decisions." *Brown*, 567 P.3d at 47. The Federal Trade Commission also finds misrepresentations about time-limited savings to be deceptive and therefore material. *See* 16 C.F.R. § 233.5. Studies have also shown that the time-limited nature of a deal is important to consumers. *See,*

45

*e.g.*, Aggarwal, P., Use it or lose it: Purchase acceleration effects of time-limited promotions, Journal of Consumer Behavior (Sept. 17, 2002) at 399–401 (study on the effect of time-limited sale advertisements found that a consumer's "willingness to buy was significantly higher" when confronted with a time-limited sale).

Accordingly, because Ms. Montes alleges that Aéropostale sent commercial emails with subject lines containing materially false or deceptive information, her CEMA claims are not preempted by CAN-SPAM.

## CONCLUSION

For the reasons stated herein, Ms. Montes respectfully requests that this Court enter an order reversing the District Court's Judgment and remanding this case with instructions to the District Court to further remand the case back to the Spokane County Superior Court.

Dated: June 26, 2026              HATTIS LUKACS & CORRINGTON

By: _Che Corrington_
                   Che Corrington

Daniel M. Hattis
Paul Karl Lukacs
Che Corrington
123 112th Ave NE, Suite 1
Bellevue, WA 98004
Telephone: (425) 233-8650

*Attorneys for Plaintiff-Appellee/Cross-Appellant Shawnna Montes*

46

## STATEMENT OF RELATED CASES

Plaintiff is not aware of any related cases pending in this Court.

47

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Numbers:** 25-8045, 26-241

I am the attorney or self-represented party.

**This brief contains 10,631 words,** including 0 words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[**X**] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** *s/ Che Corrington*          **Date** June 26, 2026

48

## CERTIFICATE OF SERVICE

*Shawnna Montes v. Penney OpCo LLC, et al.*

**Ninth Circuit Case Nos. 25-8045, 26-241**

I hereby certify that I electronically filed the foregoing/attached document, titled **Plaintiff-Appellee/Cross-Appellant Shawnna Montes's Principal and Response Brief**, on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

I certify that all participants in this case are registered CM/ECF users and service will be accompanied by the CM/ECF system.

Signature: <u> /s/ *Che Corrington*            </u>      Date: June 26, 2026